UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE


GREGORY D. GILLIS )
)
Petitioner, )
)
v. ) 3:05-cv-435
) 3:01-cr-164
) *Jordan*
)
UNITED STATES OF AMERICA )
)
Respondent. )


**MEMORANDUM**


This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255

filed by petitioner Gregory D. Gillis ("Gillis"). The government has filed its response to the

§ 2255 motion, to which Gillis has also filed his reply. For the following reasons, the § 2255

motion will be **DENIED** and this action will be **DISMISSED**.

I.  Standard of Review

This court must vacate and set aside Gillis' conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, Gillis "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that Gillis is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.    Factual Background

Gillis entered a conditional guilty plea to possession with intent to distribute 50 grams or more of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1). He was sentenced to a term of imprisonment of 140 months. On direct appeal, Gillis challenged the district court's

denial of his motion to suppress the search of his residence.  The Sixth Circuit concluded the

district court did not err in denying the motion to suppress and affirmed Gillis' judgment of

conviction.  *United States v. Gillis*, 358 F.3d 386 (6th Cir.), *cert. denied*, 543 U.S. 856

(2004).  In support of his § 2255 motion to vacate sentence, Gillis alleges several instances

of ineffective assistance of counsel; he also alleges he is innocent of the sentence imposed.


III.     Discussion


*A.  Ineffective Assistance of Counsel*


In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court

established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence

demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970),

Gillis must demonstrate that the attorney's representation "fell below an objective standard

of reasonableness."  *Strickland v. Washington*, 466 U.S. at 687-88.  In judging an attorney's

3

conduct, a court should consider all the circumstances and facts of the particular case. *Id.* at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, Gillis bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Gillis first alleges that his attorney failed to challenge the fact that there was no warrant issued for his arrest on November 7, 2001, the date he was arrested. According to Gillis, his attorney should have brought this to the court's attention during the suppression hearing.

The facts surrounding Gillis' arrest and the search of his residence were summarized by the Sixth Circuit as follows:

> On November 7, 2001, Officers Kelly Tanner and Anthony Barnes of the Knoxville Police Department responded to a domestic disturbance call at 2108 Texas Avenue ("2108"). Upon arrival, they spoke with Shaneska Williams, who told them that she had gone to a house at 1500 Texas Avenue ("1500") earlier that morning. Williams told the officers she had observed her boyfriend, Gregory Gillis, and several others smoking marijuana inside the residence. According to Williams, she had an argument with Gillis, and he

4

pushed her out of the house and locked the door. Williams claimed she had another argument with Gillis back at 2108 later that same morning. During this argument, Gillis purportedly took $60 from Williams's coffee table and slapped her across the face.

When the officers arrived, Williams asked them to remove Gillis from 1500, and she showed them a copy of the lease for the residence that had her name on it. The officers refused this request because Gillis's name was on the lease as well, although it turned out that he had been listed only as a witness. At this point, Williams became angry, and she began to tell the police about additional drug activity she had observed recently at 1500. In particular, Williams told the officers that she had seen Gillis cooking two pots of crack cocaine that morning and that he was using the residence to sell large quantities of marijuana, crack, and ecstasy.

The police responded by inquiring further into Williams's use and knowledge of the premises. She told the officers she had left 1500 in June 2001 because Gillis had been physically abusing her and because she felt the residence was unfit for their baby. However, she also told the officers that she continued to reside at both 1500 and 2108, and she gave the officers detailed information about where Gillis had drugs hidden on the property. According to Williams, Gillis kept drugs hidden inside the kitchen cabinets, in a vanity area in the bathroom, and inside two cars: a Caprice Classic, and a wrecked Nissan Maxima that was parked in the driveway. Williams also had keys to a set of interior wooden doors at 1500. Gillis had the locks changed on the exterior metal doors, but Williams told the officers that these doors were broken during a recent break-in and that she was able to gain access to the residence through them if Gillis did not answer the door. Williams gave the officers her consent to search the premises at 1500.

Tanner and Barnes contacted Officer Gina Pierce with the Organized Crime Unit, who subsequently briefed the officers charged with conducting the search. These officers were told of the locations on the property where Williams said Gillis had been hiding drugs, and they were also told that there was an outstanding warrant for a Gregory Gillis. This warrant was actually for Gillis's father, but at that time the police were not aware that two Gregory Gillises lived in the community.

When the investigating team arrived at 1500, they observed two people seated in a Caprice Classic parked in the driveway. The car's engine was still

running. As Officer Todd Gilreath approached the vehicle, he noticed the driver bending down and reaching underneath the steering column. Gilreath opened the driver's side door and he immediately detected the odor of marijuana. He recognized Gillis as the man sitting in the driver's seat and asked him to step out of the vehicle. As he patted Gillis down, Gilreath noticed a bulge in Gillis's front pocket that turned out to be $1000. Gilreath arrested Gillis because he thought there was an outstanding warrant for his arrest at the time and because he felt that Gillis had "obviously" been smoking marijuana.

After reading Gillis his rights, Gilreath asked for his consent to search the Caprice. Gillis refused. Gilreath opened the door to the vehicle anyway and shined his flashlight on the floorboard in the area where he had noticed Gillis reaching immediately before his arrest. He noticed a plastic bag sticking out from underneath the steering column and removed it. This bag contained 11.4 grams of crack cocaine. Gilreath also discovered a small amount of marijuana in the floorboard directly under the driver's seat.

While Gilreath was conducting his search of the Caprice, a group of additional officers also on the scene announced their presence and entered the residence through the set of broken metal doors Williams had told them about. Inside they discovered a small amount of marijuana in a kitchen cabinet and some postal scales. Outside the residence, Officer Walter Ricketts with the K-9 unit informed Drug Enforcement Administration Agent Stephen Ribolla that his dog had "alerted" on the wrecked Nissan Maxima that was parked in the driveway directly in front of the Caprice. At the suppression hearing, several officers testified that the Maxima was not capable of being driven. Ribolla testified that the Maxima did not have an engine and that it may not have had wheels. The windshield and several side windows were also missing. The car was unlocked, and spare parts were piled inside of it. Ribolla described the Maxima as a "shell of a vehicle" and counsel for Gillis characterized it as a "storage shed." After Ricketts informed him of the canine alert, Ribolla searched inside the Maxima and discovered two grocery bags located underneath door panels that were lying on the floor of the vehicle. The bags contained sixty grams of crack cocaine and a digital scale.

While the search was still being conducted at 1500, Pierce went to 2108 to speak with Williams and to obtain a written statement memorializing her prior oral consent. In her statement to police, Williams indicated that she also "live[d] at 1500 Texas" and that she had given the police "verbal consent to search the house for drugs."

6

After the search, Gillis was taken to the police station. He waived his *Miranda* rights and admitted to possessing the marijuana and crack cocaine that were found inside the Caprice, but he denied any knowledge of the drugs found inside the house or in the Maxima. Gillis was charged in a one-count indictment with knowingly and intentionally possessing with intent to distribute fifty grams or more of a mixture and substance that contains cocaine base in violation of 21 U.S.C. § 841(a) and (b).

*United States v. Gillis*, 358 F.3d 386 at 388-89.

As the Sixth Circuit noted, the police officers believed there was an outstanding warrant for Gillis' arrest. The subsequent discovery that there was no warrant for Gillis did not invalidate his arrest, given the officers' reasonable belief that a warrant existed. *See Arizona v. Evans*, 514 U.S. 1, 14-16 (1995) (good faith exception to exclusionary rule applied where police officer made an arrest based on a computer inquiry which erroneously indicated that there was an outstanding arrest warrant for defendant).

In addition, Gillis was subject to arrest without a warrant because the police officers concluded Gillis was smoking marijuana at the time of his arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (citations omitted).

Under the circumstances, the warrantless arrest of Gillis was valid. According, there was no reason for Gillis' attorney to challenge the arrest during the suppression hearing and she did not render ineffective assistance of counsel by failing to do so. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

Gillis next alleges his attorney was ineffective by failing to argue *Apprendi v. New Jersey*, 530 U.S. 466 (2000), on appeal.  In *Apprendi*, the Supreme Court held:  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt."  *Id*. at 490.  In federal prosecutions, such facts must also be charged in the indictment.  *Id*. at 476 (citing *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)).

The indictment against Gillis charged that he "did possess with intent to distribute fifty (50) grams or more of a mixture and substance that contains cocaine base, a Schedule II controlled substance." [Criminal Action No. 3:01-cr-164, Court File No. 7, Indictment]. Gillis was thus subject to a statutory term of imprisonment of "not less then 10 years or more than life."  21 U.S.C. § 841(b)(1)(A).  His sentence of 140 months did not exceed the prescribed statutory maximum of life in prison.  Thus, there was no *Apprendi* error and counsel did not render ineffective assistance by failing to argue *Apprendi* on appeal.  *See Mathews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993) (an attorney is not required to raise meritless issues on appeal).

Finally, Gillis alleges his attorney was ineffective in plea negotiations.  Specifically, he claims he should only have pleaded guilty to the 11.4 grams of cocaine base which he admitted possessing, and therefore the government would have had to demonstrate at sentencing that he was responsible for the additional 60 grams of cocaine base found in the wrecked Nissan Maxima located on the property of his residence. Gillis' argument overlooks the fact that he was not offered a plea agreement to a lesser amount of cocaine base.

In its response to the § 2255 motion, the government states unequivocally that Gillis would not have been allowed to plead guilty to less than 50 grams of cocaine base.  Gillis' options, therefore, were to (1) plead guilty to 50 grams of cocaine base and receive the three-level reduction for acceptance of responsibility, which he did, or (2) plead not guilty, go to trial, and lose the three-level reduction if convicted.

While the court is certain that defense counsel would have preferred to secure for Gillis a plea agreement to a lesser amount of cocaine base, such an agreement was not possible, and counsel's failure in that regard did not constitute ineffective assistance of counsel.  Based upon the foregoing, Gillis has failed to demonstrate he received ineffective assistance of counsel under the standard set forth in *Strickland*.


### B.  Innocence of the Sentence Imposed


Gillis alleges he is actually and factually innocent of the sentence imposed under the sentencing guidelines.  In support of his claim, Gillis states that the Supreme Court has decided that the mandatory use of the sentencing guidelines violates the Constitution; Gillis relies on the fairly recent Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005).  The Sixth Circuit, however, has held that *Booker* "does not apply retroactively in collateral proceedings."  *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir.), *cert. denied*, 546 U.S. 885 (2005).  *See also Valentine v. United States*, 488 F.3d 325, 330 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1311 (2008) ("We hold that petitioners whose convictions

became final prior to *Booker* may not rely on *Booker*'s rule on collateral review."). Accordingly, Gillis is not entitled to relief on this claim.

IV.     <u>Conclusion</u>

Gillis is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. In addition to the above, this court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** Gillis leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Gillis having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Leon Jordan
United States District Judge